IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, a Division of the Rail Conference of the International Brotherhood of Teamsters, 1370 Ontario Street Cleveland, OH 44113-1702<br><br>Petitioner,<br><br>v.<br><br>UNION PACIFIC RAILROAD CO., 1416 Dodge Street Omaha, NE 68179<br><br>Respondent. | CASE NO. |

**PETITION FOR ENFORCEMENT OF AN AWARD AND ORDER
OF A DIVISION OF THE NATIONAL RAILROAD ADJUSTMENT BOARD
<u>PURSUANT TO THE RAILWAY LABOR ACT</u>**

1.   This is an action to enforce Award No. 26782 of the National Railroad Adjustment Board, First Division ("NRAB" or "Adjustment Board"), pursuant to Section 3, First (p) of the Railway Labor Act ("RLA") (45 U.S.C. § 153, First (p)). Award No. 267821 was issued pursuant to the provisions of the RLA. A true and correct copy of the award is attached to this petition as Exhibit A.

2.   Jurisdiction to entertain this petition and to grant the relief requested herein is conferred on this Court by Section 3, First (p) of the RLA (45 U.S.C. § 153, First (p)) and by Sections 1331 and 1337 of the Judicial Code (28 U.S.C. §§ 1331 and 1337).

3.   Venue is proper in this Court under Section 3, First (p) of the RLA (45 U.S.C. § 153, First (p)), because Respondent operates through this judicial district.

4. Petitioner Brotherhood of Locomotive Engineers and Trainmen, a Division of the Rail Conference of the International Brotherhood of Teamsters ("BLET") is a national labor organization and the duly authorized bargaining representative under the RLA for persons in the employ of the respondent as locomotive engineers. BLET is a "representative" as defined in Section 1, Sixth of the RLA (45 U.S.C. § 151, Sixth).

5. Respondent Union Pacific Railroad Company ("UP" or "the Carrier") is a rail company engaged in the transportation of property by railroad in interstate commerce and the operation of rail equipment and facilities; it is a "carrier" within the meaning of Section 1, First of the RLA (45 U.S.C. § 151, First).

6. Section 3, First (i) of the RLA (45 U.S.C. § 153, First (i)) provides that disputes between a carrier and an employee or group of employees arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes, but failing to reach an adjustment between the parties, the dispute may be transferred to an appropriate division of the NRAB.

7. Section 3, First (o) of the RLA (45 U.S.C. § 153, First (o)) provides that in case of an award by any division of the NRAB in favor of petitioner, the division of the Board shall make an order, directed to the carrier to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a certain date. Section 3, First (o) further provides that if an award not favorable to the petitioner is made, the Board shall make an order to the petitioner stating such determination.

8.      Section 3, First (p) of the RLA (45 U.S.C. § 153, First (p)) provides that if a carrier does not comply with a division of the Adjustment Board's order within the time limit prescribed in the order, the petitioner may file a petition in the District Court of the United States.  In such a proceeding,

> [t]he district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: Provided, however, That such order may not be set aside except for failure of the division to comply with the requirements of this Act, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

9.      BLET and UP are parties to a collective bargaining agreement that governs the rates of pay, rules, and working conditions of Locomotive Engineers employed by UP ("the Agreement"), which includes a "System Agreement – Discipline Rule" governing all discipline of locomotive engineers, a copy of which is attached as Exhibit B.  In relevant part, this rule provides:

> 17. If, by operation of this agreement or as the result of an arbitration decision, the Carrier is required to pay an engineer who has been disciplined for "time lost," the amount due shall be based upon the average daily earnings of the engineer for the 12 month period (beginning with the first full month) prior to removal from service. The sum of the claimant's earnings during such period shall be divided by 365 to arrive at the average daily earnings to be applied in determining the amount of lost wages, based on the number of days of discipline.

Ex. B at 3.

10.     The claim giving rise to this dispute arose on or about June 25, 2005, when UP removed Locomotive Engineer T.L. Pax from service after learning that he had pleaded guilty to a felony charge.  The Carrier thereafter charged Pax with violation of UP rules and, following an

investigation, UP terminated Pax's employment by letter dated July 15, 2005.

11. By letter dated August 3, 2005, in accordance with the Agreement, BLET appealed UP's decision to terminate Pax.

12. UP denied BLET's appeal by letter dated September 26, 2005 from its highest officer designated to handle such disputes, UP Assistant Director Labor Relations Robert A. Henderson.

13. Unable to resolve the dispute directly with UP, BLET submitted the dispute to the NRAB for resolution pursuant to the Agreement and the RLA.

14. The claim BLET presented to the Board was as follows:

Claim in behalf of Engineer T. L. Pax, hereinafter referred to as claimant, Employee No. [redacted for privacy reasons], Union Pacific Railroad Northern Region, Twin Cities Service Unit, that claimant be reinstated to service with full seniority and vacation benefits restored, compensated for any and all lost time, including time spent at the investigation, reimbursed for any and all medical care and dental expenses incurred as well as any COBRA payments made by claimant while claimant was dismissed from service, that claimant be removed from the Behavior Modification Policy, Level V (Final) and that this incident be expunged from claimant's personal record when claimant was investigated on July 11, 2005 on the following charge:

> "Please report to the Office of the Manager of Train Operations, 1003 W. Commerce Street, Adams, WI 53910, on Thursday, July 7, 2005 at 1300 Hrs. for investigation and hearing to develop the facts and place your individual responsibility, if any, in connection with your alleged conduct unbecoming a Union Pacific employee when you pled guilty on June 24, 2005 to a Felony in State of Wisconsin v. Theodore L. Pax, Jr. in Chippewa County Case Number 2005CF000013."

15. Following consideration of both parties' submissions of argument and evidence, the First Division of the NRAB issued Award No. 26782 on March 4, 2009. In Award No. 26782, the Adjustment Board sustained BLET's claim. It found that "the Claimant's dismissal was not supported by just cause and order[ed] it rescinded." Ex. A, p. 4. The Adjustment Board

further found that "The Claimant shall be entitled to reinstatement with seniority unimpaired and pay for time lost in accordance with the terms of the SYSTEM AGREEMENT – DISCIPLINE RULE – to the extent that he was available for work, excluding any period of incarceration." *Id.* The NRAB ordered that UP comply with the Award within 30 days.

16. UP has failed to comply with the NRAB's Award No. 26782.  Although it reinstated Pax to employment, it has not complied with the Award's requirement that it pay Pax in full for time lost in accordance with the terms of the System Agreement – Discipline Rule.

17. Award No. 26782 does not provide that the Carrier's back pay liability to Pax is to be offset by Pax's outside earnings.  Nevertheless, UP deducted from the back pay that the Adjustment Board ordered it to pay to Pax certain monies that the Carrier attributes to "outside wages."

18. UP never argued, either during the on-property handling of the claim under the Agreement or in its written submission or oral presentation to the Adjustment Board, that it should be entitled to offset its backpay liability by Pax's outside earnings.

19. Award No. 26782 was rendered in compliance with the RLA since the NRAB (a) complied with the requirements of the Act, (b) confined itself to matters within the scope of the Board's jurisdiction, and (c) did not commit fraud or corruption.

**WHEREFORE**, Petitioner BLET prays that this Court grant the following relief:

(a) Enter an order in favor of Petitioner enforcing Award No. 26782 of the NRAB, First Division;

(b) Order Respondent to pay Pax the monies it has withheld from the pay for time lost he is due in accordance with the terms of the System Agreement – Discipline Rule

      as ordered in Award No. 26782, plus pre-judgment and post-judgment interest on all such amounts from April 5, 2009 until such amounts are paid;

(c)     Order Respondent to pay Petitioner's reasonable attorneys' fees as provided for in 45 U.S.C. § 153, First (p); and

(d)     Such other and further relief as the Court deems just and proper in the circumstances.

Respectfully submitted,

/s/ Marilyn Townsend
Marilyn Townsend, Attorney
122 West Washington Avenue
Suite 610
Madison, WI 53703
PHONE: (608) 255-5111
FAX: (608) 255-3358
E-MAIL: mtownsend@mtownlaw.com

Michael S. Wolly
Margo Pave
ZWERDLING, PAUL, KAHN & WOLLY, P.C.
1025 Connecticut Ave. NW Suite 712
Washington, D.C. 20036
PHONE: (202) 857-5000
FAX: (202) 223-8417
E-MAIL: mwolly@zwerdling.com
mpave@zwerdling.com

# EXHIBIT A

Case: 3:11-cv-00162 Document #: 1 Filed: 03/03/11 Page 7 of 16

Form 1            NATIONAL RAILROAD ADJUSTMENT BOARD
                              FIRST DIVISION

                                                                    Award No. 26782
                                                                    Docket No. 46368
                                                       09-1-NRAB-00001-060036
                                                                        06-1-36

      The First Division consisted of the regular members and in addition Referee Jacalyn J. Zimmerman when award was rendered.

                             (Brotherhood of Locomotive Engineers and Trainmen
PARTIES TO DISPUTE:    (
                             (Union Pacific Railroad Company/Northern Region

STATEMENT OF CLAIM:

> "Claim in behalf of Engineer T. L. Pax, hereinafter referred to as claimant, Employee No. 0160166, Union Pacific Railroad Northern Region (former Chicago & North Western Transportation Company) that claimant be reinstated to service with full seniority and vacation benefits restored, compensated for any and all lost time, including time spent at the investigation, reimbursed for any and all medical care and dental expenses incurred as well as any COBRA payments made by claimant while claimant was dismissed from service, that claimant be removed from the Behavior Modification Policy, Level V (Final) and that this incident be expunged from claimant's personal record when claimant was investigated on July 11, 2005 on the following charge:
>
>> 'Please report to the Office of the Manager of Train Operations, 1003 W. Commerce Street, Adams, WI 53910, on Thursday, July 7, 2005 at 1300 Hrs. for investigation and hearing to develop the facts and place your individual responsibility, if any, in connection with your alleged conduct unbecoming a Union Pacific employee when you pled guilty on June 24, 2005 to a Felony in State of Wisconsin v. Theodore L. Pax Jr. in Chippewa County Case Number 2005CF000013.'"

Form 1
Page 2

Award No. 26782
Docket No. 46368
09-1-NRAB-00001-060036
06-1-36

FINDINGS:

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

Claimant T. L. Pax had been employed by the Carrier for 12 years. On or about June 24, 2005, a Carrier officer received a telephone call from an anonymous person who stated that the Claimant had pled guilty to a felony charge. The Carrier investigated the matter and determined that the Claimant indeed pled guilty that day, in the State of Wisconsin, to second degree sexual assault of a child. The Carrier immediately removed the Claimant from service and, on July 1, 2005, charged him with several Rules violations.

At the Investigation, which was held on July 11, 2005, the Claimant acknowledged that he had, as alleged, pled guilty to the felony. He also testified that he had not yet received formal notice of his conviction and had not been sentenced.

On July 15, 2005, the Carrier found the Claimant guilty of conduct unbecoming an employee, in violation of General Code of Operating Rule 1.6 (5) and dismissed him from service. That Rule provides that employees must not be immoral.

On December 1, 2005, the Claimant was sentenced to two years in prison and six years of extended supervision. The terms of the extended supervision include prohibitions on contact with juveniles and on computer usage, and the requirement that the Claimant register in his community as a sex offender.

Form 1                                                                                            Award No. 26782
Page 3                                                                                          Docket No. 46368
                                                                                                09-1-NRAB-00001-060036
                                                                                                                    06-1-36

      There is no dispute as to the essential facts. The Carrier asserts that those facts satisfy its burden of proof and justify the penalty imposed. The Organization acknowledges that the Claimant pled guilty to a felony offense involving extremely distasteful conduct. However, it asserts, the better reasoned arbitration decisions which address the subject of illegal, immoral and repulsive off-duty conduct usually follow the principle that the unbecoming conduct must be shown to have a reasonable and discernible connection to, and an adverse impact upon, the Carrier's business activities to justify permanent removal of the offending employee.

      We carefully reviewed the record in its entirety, including the numerous arbitration awards cited by each party. Precedent on this Division (see Awards 24258 and 25295) establishes that in off-duty misconduct situations like the instant one, the Carrier cannot justify automatic discharge simply by demonstrating that the objectionable conduct took place. Rather, the Carrier must satisfy at least one of four tests:

1) Did the conviction (or the conduct leading up to the conviction) harm the Carrier's reputation, business or bring discredit to the enterprise or its employees?
2) Did the conviction (or the conduct leading up to the conviction) render the employee unable to appear at work or otherwise satisfactorily perform his job?
3) Did the conviction (or the conduct leading up to the conviction) cause other employees to reasonably fear or refuse to work with the employee?
4) Did the conviction (or the conduct leading up to the conviction) demonstrably render the employee unfit to deal with the Carrier's customers or enter their places of business?

      The Carrier's evidence in this case consisted solely of demonstrating that the Claimant pled guilty to a felony involving sexual misconduct with a child. While the Carrier's characterization of that conduct as generally immoral is not off the mark, that is not sufficient to satisfy its burden of demonstrating a nexus between the conduct and the Claimant's job so as to justify the disciplinary action imposed. No evidence was presented to show that any of the questions recited above could be answered in the affirmative. The record contains nothing to demonstrate that the Claimant's conduct was generally known or harmed the Carrier's reputation, that

Form 1                                                Award No. 26782
Page 4                                           Docket No. 46368
                                                                09-1-NRAB-00001-060036
                                                                               06-1-36

other employees would fear or refuse to work with him, or that he was unfit to deal with the Carrier's customers. The nature of the Claimant's position as a Locomotive Engineer, does not, on its face, give rise to a presumption that these conditions are satisfied as might be the case if, for example, he were employed as a school teacher. Further, while the Carrier notes that the Claimant's lengthy incarceration demonstrated that he was unable to appear for work and/or satisfactorily perform his job, we note that at the time of his dismissal the Claimant had been removed from service by the <u>Carrier</u> and it had not yet been determined whether, or for how long, he would be incarcerated and therefore unavailable. For these reasons, we conclude that the Carrier failed to meet its burden of showing a nexus between the Claimant's conduct and his employment by the Carrier.

We therefore find that the Claimant's dismissal was not supported by just cause, and order it rescinded. The Claimant shall be entitled to reinstatement with seniority unimpaired and pay for time lost in accordance with the terms of the SYSTEM AGREEMENT – DISCIPLINE RULE to the extent that he was available for work, excluding any period of incarceration. If, upon notification by the Carrier, the Claimant is unable to return to work due to incarceration, his dismissal shall be affirmed.

## AWARD

Claim sustained in accordance with the Findings.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

                                          NATIONAL RAILROAD ADJUSTMENT BOARD
                                                        By Order of First Division

Dated at Chicago, Illinois, this 4th day of March 2009.

# EXHIBIT B

Case: 3:11-cv-00162 Document #: 1 Filed: 03/03/11 Page 12 of 16

Attachment (a)

# SYSTEM AGREEMENT - DISCIPLINE RULE

All existing agreements pertaining to the handling of discipline are eliminated and replaced by this agreement.

## GENERAL

Locomotive engineers will not be disciplined without first being given a fair and impartial investigation except as provided below. They may, however, be held out of service pending investigation, but it is not intended that an engineer be held out of service for minor offenses.

## NOTICE

Within 10 days of the time the appropriate company officer knew or should have known of an alleged offense, the engineer will be given written notice of the specific charges against him or her. The notice will state the time and place of the investigation and will be furnished sufficiently in advance to allow the engineer the opportunity to arrange for representation by a BLE representative(s) (the BLE Local Chairman or other elected BLE Officers) and witnesses. The notice will propose discipline to be assessed if investigation is waived and designate a carrier officer who may be contacted for the purpose of arranging for an informal conference on the matter. A copy of the notice will be furnished to the BLE Local Chairman.

## WAIVER

4. Prior to the investigation, the engineer (and the BLE representative if desired by the engineer) may contact the designated carrier officer and arrange for an informal conference to discuss the alleged offense and proposed discipline. Such informal conference may be either in person or by telephone.

   (a) If such informal conference results in the proposed discipline being dropped, no further action will be taken.

   (b) If such informal conference results in proposed discipline being accepted by the engineer and the investigation being waived, the engineer's record will be updated accordingly.

revised 02/28/96
syst1206.jjm

1

EXHIBIT 1 PAGE 1 OF 4

(c) If such informal conference does not result in either (a) or (b) above or no informal conference takes place, the discipline imposed as a result of a hearing may not exceed that proposed in the notice of charges.

## INVESTIGATION

5. Unless postponed for good cause, the investigation will be held no later than 10 days after the date of the notice.

6. When practicable, the investigation will be held at the engineer's home terminal. When that is not practicable, the investigation will be held at a location which will minimize the travel, inconvenience and loss of time for all employees involved. When an engineer is required to travel to an investigation at other than his or her home terminal, the engineer will be reimbursed for actual, reasonable and necessary expenses incurred.

7. Where request is made sufficiently in advance and it is practicable, the engineer and/or the BLE representative will be allowed to examine material or exhibits to be presented in evidence prior to the investigation. At the investigation, the engineer and/or the BLE representative will be afforded the opportunity to examine or cross examine all witnesses. Such examination will extend to all matters under investigation.

8. The investigation will be recorded and transcribed. Copies of transcript will be furnished to the engineer and the BLE Local Chairman no later than the date discipline is issued. If the accuracy of the transcript is questioned and the investigation was electronically recorded, the tapes shall be examined and, if necessary, the transcript will be corrected.

## DECISION

9. A written decision will be issued no later than 10 days after completion of the hearing. The notice will be sent by US Mail to the last known address of the engineer and to the BLE Local Chairman.

10. If the Superintendent fails to issue a decision within such 10 day time limit or if the engineer is found not at fault, the engineer will be paid for any time lost and the engineer's record will be cleared of the discipline at issue.

## APPEALS

11. If the engineer is not satisfied with the decision, the BLE General Chairman may appeal to the designated Labor Relations officer within 60 days from the date of the Superintendent's decision.

12. The Labor Relations officer will respond to the appeal within 60 days from the date of the BLE General Chairman's appeal. If the Labor Relations officer fails to respond within 60 days, the engineer will be paid for any time lost and the engineer's record will be cleared of the discipline at issue.

13. If the engineer is dissatisfied with the decision of Labor Relations, proceedings for final disposition of the case under the Railway Labor Act must be instituted by the engineer or his or her duly authorized representative within one year of the date of that decision or the case will be considered closed and the discipline will stand as issued, unless the time limit is extended by mutual agreement.

## MISCELLANEOUS

14. If a dispute arises concerning the timeliness of a notice or decision, the postmark on the envelope containing such document shall be deemed to be the date of such notice or decision.

15. Engineers attending an investigation as witnesses at the direction of the carrier will be compensated for all time lost and, in addition, will be reimbursed for actual, reasonable and necessary expenses incurred. When no time is lost, witnesses will be paid for actual time attending the investigation with a minimum of two hours, to be paid at the rate of the last service performed.

16. The engineer being investigated or the BLE representative may request the Carrier to direct a witness to attend an investigation, provided sufficient advance notice is given as well as a description of the testimony the witness would be expected to provide. If the Carrier declines to call the witness and the witness attends at the request of the engineer or BLE and provides relevant testimony which would not otherwise have been in the record, the carrier will compensate the witness as if it had directed the witness to attend.

17. If, by operation of this agreement or as the result of an arbitration decision, the Carrier is required to pay an engineer who has been disciplined for "time lost", the amount due shall be based on the average daily earnings of the engineer for the 12 month period (beginning with the first full month) prior to removal from service. The sum of the claimant's earnings during such period shall be divided by 365 to arrive at the average daily earnings to be applied in determining the amount of lost wages, based on the number of days of discipline.

revised 02/28/96
syst1206.jjm

3

EXHIBIT A PAGE 3 of 4

NOTE, Section 1: This agreement is not intended to modify or replace "By-Pass" or "Companion" Agreements.

This agreement is not intended to modify or replace Carrier policies pertaining to discipline; except that to the extent this agreement may conflict with a Carrier policy, this agreement shall govern.

NOTE, Section 17: The twelve (12) month period utilized in determining the employee's average daily earnings will not include any month(s) in which the employee experienced unusually low earnings due to circumstances beyond his/her control, such as personal injury, documented major illness, of the employee or a family member, etc. It is not the intent of this NOTE, however, to exclude those months in which the employee lays off on his/her own accord. It is intended the twelve (12) month period utilized will reflect the engineer's normal work habits and history.

Example: An engineer was dismissed in October for an alleged rules violation. Pursuant to an arbitration award, the engineer is reinstated and awarded time lost (back pay). Six months prior to his/her dismissal, said engineer was off-duty (medical leave) for two (2) months (March and April) due to a documented major illness, such as a heart attack.

Calculation of the employee's average daily earnings for the preceding twelve (12) months will commence with September and will incorporate the prior fourteen (14) months, including September (March and April are excluded due to the employee having no earnings in those months due to the medical condition).

revised 02/28/96
syst1206.jjm

4

EXHIBIT A PAGE 4 OF 4